IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| Aaron Norris, | ) | C/A No. 1:23-cv-784-SAL |
|---|---|---|
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| v. | ) | (ERISA) |
| | ) | |
| Kimberly-Clark Corporation Short and Long Term Disability Insurance Plan; Kimberly-Clark Corporation Health and Welfare Benefit Plan; and The Prudential Insurance Company of America, | ) | (Non-jury) |
| Defendants. | ) | |

Plaintiff Aaron Norris, complaining of the above-named Defendants, alleges and shows unto this Honorable Court the following:

**NATURE OF THE ACTION**

1. Plaintiff Aaron Norris worked for Kimberly-Clark for more than 20 years. After going out of work at age 63 for a total knee replacement, his health got much worse. Norris now suffers from hypercortisolism, hypertension, Cushing's Syndrome, diabetes mellitus, elevated lipids, glucose intolerance, mood, cognition, orthopedic issues, and side effects from prescription medicine (such as the steroids which caused Cushing's). He has not worked since February 25, 2019. While Defendants initially approved and paid the bulk of Norris' short-term disability claim, they have wrongfully denied him all long-term disability benefits and continuation of life insurance with waiver or premium because of disability under employee group benefits plans governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA").

1

## **JURISDICTION AND VENUE**

2. As this case arises out of claims under employee welfare benefit plans, jurisdiction is conferred on this Court under ERISA, 29 U.S.C. §§ 1001 *et seq.*

3. Defendant Kimberly-Clark Corporation Short and Long Term Disability Insurance Plan (herein after "Disability Plan") is an ERISA welfare benefit plan, as defined by 29 U.S.C. § 1002(1) and 29 U.S.C. § 1132(d)(a) *et seq.*

4. Defendant Kimberly-Clark Corporation Health and Welfare Benefit Plan (herein after "Life Plan") is an ERISA welfare benefit plan, as defined by 29 U.S.C. § 1002(1) and 29 U.S.C. § 1132(d)(a) *et seq.*

5. At all times relevant to this lawsuit, Defendant The Prudential Insurance Company of America (herein after "Prudential") has been the insurer of the Disability Plan.

6. At all times relevant to this lawsuit, Defendant Prudential has also been the insurer of the Life Plan.

7. Defendant Prudential's group contract number for the Disability Plan is Policy No. G-46708-TX.

8. Defendant Prudential is a foreign corporation headquartered in New Jersey, a state other than South Carolina.

9. Defendant Prudential is not registered with the South Carolina Secretary of State to conduct business in this state.

10. Kimberly-Clark employed Norris at its facility in Beech Island, South Carolina.

11. Plaintiff had been a participant in the Disability Plan and the Life Plan at all times relevant to these claims for ERISA benefits described herein.

12. Venue is proper under ERISA, as the two plans were administered in Beech Island, South Carolina.

13. This Court has federal jurisdiction under ERISA, thus this Court has subject matter jurisdiction for this issue.

## FACTS

14. Plaintiff worked for Kimberly-Clark for two decades.

15. Prior to Plaintiff becoming disabled, Plaintiff worked for Kimberly-Clark as a machine process operator. (Admin. R. 11).

16. As a full-time employee of Kimberly-Clark, Plaintiff was eligible to participate in the Disability and Life Plans.

17. Plaintiff was participating in the Disability Plan and the Life Plan during his employment with Kimberly-Clark. (Admin. R. 17.)

18. In December 2015, Plaintiff had to have his right adrenal gland surgically removed.

19. Plaintiff developed Cushing's Syndrome in 2015.

20. Plaintiff returned to work after the surgery and worked for three more years.

21. As a machine operator, Plaintiff was required to: stand and walk frequently; lift up to 50 pounds; reach above the shoulders; crawl; bend; move hazardous mechanical parts; be exposed to fume and dust particles to perform this job; and work 12-hour – half during the day and half on night shifts. (Admin. R. 211-12.)

22. On February 25, 2019, Plaintiff took a leave of absence from Kimberly-Clark to have a total left knee replacement surgery. (Admin. R. 13.)

23. During Winter and Spring 2019, Plaintiff's problems with his remaining adrenal gland got worse.

24.     Plaintiffs' cortisol levels were chronically high after the first adrenal gland surgery. Anything over 180 is considered high, and Plaintiff's cortisol in this time period was regularly double that.

25.     On February 27, 2019, Plaintiff filed a claim for short-term disability with Defendant Prudential. (Admin. R. 13.)

26.     Based the Disability Plan, Defendant Prudential defined disability as follows:

> **How Does Prudential Define Disability?**
>
> During the ***elimination period***, you are disabled when Prudential determines that:
> -you are unable to perform the ***material and substantial duties*** of your ***regular occupation*** due to your ***sickness*** or ***injury***,
> -you are under ***regular care*** of a ***doctor***, and
> -you are not working not working at any job.
>
> After the elimination period, you are disabled when Prudential determines that due to your sickness or injury:
> -you are unable to perform the material and substantial duties of your regular occupation, or you have a 20% or more loss in ***weekly earnings*** and
> -you are under the regular care of a doctor.
>
> The loss of a professional or occupational license or certification does not, in itself, constitute disability.
>
> Prudential will assess your ability to work and extent to which you are able to work by considering the facts and opinions from:
> -your doctors; and
> -doctors, other medical practitioners or vocation experts of our choice.
> …
>
> ***Material and substantial duties*** means duties that:
> -are normally required for the performance of your regular occupation; and
> -cannot be reason omitted or modified.
> …
>
> ***Sickness*** means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth. Disability must begin while you are covered under the plan.

4

(Admin. R. 353-54.)

27. On February 27, 2019, Plaintiff's orthopedist, Dr. Larry Carter ("Dr. Carter"), amended Plaintiff's work excuse, stating Plaintiff would have surgery on the left knee on March 15, 2019, and would return to work on June 25, 2019. (Admin. R. 163.)

28. On March 1, 2019, Kimberly-Clark informed Defendant Prudential that it would be unable to accommodate Plaintiff's medical restrictions in his job as a machine process operator; the medical restrictions given by Dr. Carter were for Plaintiff to have no prolonged sitting or standing. (Admin. R. 52-53.)

29. March 1, 2019, Defendant Prudential contacted Plaintiff to inquire about Plaintiff's absence from work. Plaintiff explained that he was not able to work given the pain and lack of mobility. Plaintiff's job at Kimberly-Clark required him to work 12-hour shifts on his feet. Plaintiff was unable to take pain medication for the left knee because of a stomach ulcer. Kimberly-Clark did not allow Plaintiff to work light duty. (Admin. R. 54.)

30. On March 6, 2019, Kimberly-Clark told Defendant Prudential that it had denied Plaintiff any further leave. (Admin. R. 72.)

31. On March 8, 2019, Kimberly-Clark again informed Defendant Prudential that it had denied Plaintiff any further leave of absence. (Admin. R. 81.)

32. On March 11, 2019, Kimberly-Clark told Defendant Prudential that it was not able to accommodate Plaintiff's medical restrictions of not having prolonged sitting and standing. (Admin. R. 95-96.)

33. On March 12, 2019, Defendant Prudential approved Plaintiff's claim for short-term disability benefits for 10 weeks, with Plaintiff scheduled to return to work after knee replacement on May 24, 2019. (Admin. R. 111.)

34. On March 15, 2019, Plaintiff had total knee replacement surgery on his left knee and was medically projected to return to work on May 24, 2019. (Admin. R. 79.)

35. On May 16, 2019, Defendant Prudential approved Plaintiff's claim for short-term disability through June 25, 2019. (Admin. R. 157.)

36. On June 24, 2019, after examining Plaintiff, Dr. Carter extended his work excuse through July 24, 2019. (Admin. R. 173.)

37. On June 26, 2019, Defendant Prudential extended Plaintiff's short-term disability benefits through June 23, 2019. (Admin. R. 176.)

38. On or about July 18, 2019, Plaintiff requested that Defendant Prudential transition him from short-disability benefits to long-term disability benefits. (Admin. R. 186-88.)

39. Based the Disability Plan, Defendant Prudential defines disability for long-term disability as follows:

> **How Does Prudential Define Disability?**
>
> You are disabled when Prudential determines that:
> -you are unable to perform the *material and substantial duties* of your *regular occupation* due to your *sickness* or *injury*, and
> -you are under *regular care* of a *doctor*, and
> -you have 20% or more loss in your *monthly earnings* due to that sickness or injury.
>
> After 24 months or payments, you are disabled when Prudential determines that due to the same sickness or injury:
> -you are unable to perform the duties of any *gainful occupation* for which you are reasonably fitted by education, training or experience and
> -you are under the regular care of a doctor.
>
> The loss of a professional or occupational license or certification does not, in itself, constitute disability.
>
> Prudential will assess your ability to work and extent to which you are able to work by considering the facts and opinions from:
> -your doctors; and

6

> -doctors, other medical practitioners or vocation experts of our choice.
> …
>
> ***Material and substantial duties*** means duties that:
> -are normally required for the performance of your regular occupation; and
> -cannot be reason omitted or modified.
> …
>
> ***Sickness*** means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth. Disability must begin while you are covered under the plan.

(Admin. R. 263.)

40. In 2019 and since, Plaintiff has experienced the following symptoms from Cushing's Syndrome: swollen legs, increased blood pressure levels, and exhaustion.

41. In the Administrative Record, Defendant Prudential noted that the new attending physician, endocrinologist Dr. Carlos Isales ("Dr. Isales"), was "keeping Plaintiff out of work" and more information from Dr. Isales was needed (Admin. R. 205).

42. On July 19, 2019, Defendant Prudential admitted in the Administrative Record that Plaintiff was entitled to long-term benefits until January 25, 2025. (Admin. R. 218-20.)

43. Additionally, on July 19, 2019, Defendant Prudential stated that Plaintiff would be entitled to continue receive at least 60 percent of pre-disability income ,so long as Plaintiff continued to be unable to perform job duties as of August 27, 2021. (Admin. R. 218-20.)

44. On July 23, 2019, Dr. Isales informed Defendant Prudential that because of Plaintiff's extensive symptoms from Cushing's Syndrome, Plaintiff was unable to work at that time. (Admin. R. 230-32.)

45. Dr. Isales documented to Defendants that Plaintiff had Cushing's Syndrome and, additionally, depression, irregular blood pressure, and irritability.

46. On August 20, 2019, Defendant Prudential stated that Plaintiff's medical records would be sent to its self-selected physician, Dr. Robert Cooper ("Dr. Cooper"), to determine if Plaintiff would receive long-term disability. (Admin. R. 396.)

47. On August 21, 2019, Defendant Prudential became aware that Plaintiff also had a growth on his left adrenal gland that was causing symptoms. (Admin. R. 397.)

48. In August 2019, Plaintiff's treating physicians, Drs. Isales and Carter, opined that Plaintiff could not return to work until September 2019. (Admin. R. 397.)

49. On August 27, 2019, Defendant Prudential's internal nurse consultant Thomas McDow ("McDow") sent a letter to Dr. Isales. McDow told Dr. Isales that Prudential believed that Plaintiff should be able to return to work for Kimberly-Clark because of Plaintiff's Cushing's Syndrome symptoms were "self-reported" and that Plaintiff only had mild swelling in the lower extremities and a scar from the knee replacement surgery. (Admin. R. 410.)

50. On September 18, 2019, Dr. Isales responded to the insurer by sending a letter describing how Plaintiff's Cushing's Syndrome was worsening, and Plaintiff needed to be out of work until November 23, 2019. (Admin. R. 462.)

51. On September 19, 2019, Defendant Prudential became aware that Dr. Isales was evaluating Plaintiff for surgery to remove the left adrenal gland. (Admin. R. 420.)

52. By letter dated September 20, 2019, Defendant Prudential declared its decision to deny Plaintiff long-term disability based on Dr. Carter's by-then-abandoned recommendation for Plaintiff to return to work on July 29, 2019, and an alleged lack of laboratory evidence from Dr. Isales to display the severity of Plaintiff's Cushing's Syndrome symptoms.

53.     Defendant Prudential made its decision to deny benefits to Plaintiff without ever having an independent medical examination of Plaintiff conducted. (Admin. R. 422-23.)

54.     On November 25, 2019, Plaintiff timely appealed the denial and provided additional medical support.   (Admin. R. 452-53.)

55.     On December 3, 2019, Defendant Prudential directed employee Wendy Woolf to locate a consulting endocrinologist who would answer Defendant Prudential's leading inquires regarding the severity of Plaintiff's Cushing's Syndrome. (Admin. R. 475-76.)  Woolf was apparently unsuccessful.

56.     On December 6, 2019, Defendant Prudential's previously-selected medical consultant, Dr. Cooper, opined without examination that Plaintiff's Cushing's Syndrome was not severe enough to impair Plaintiff's functions to work. (Admin. R. 485-89.)

57.     On December 31, 2019, Dr. Cooper again gave opined that Plaintiff's Cushing's Syndrome was not severe enough to impair Plaintiff's functions necessary to work. Dr. Cooper ignored Plaintiff's laboratory results displaying persistently high cortisol levels. (Admin. R. 497-98.)

58.     On January 9, 2020, Defendant Prudential went on to tell Plaintiff that no decision was reached regarding his appeal. (Admin. R. 503-04.)

59.     On January 16, 2020, Dr. Isales faxed Defendant Prudential additional medical records from Plaintiff's medical checkup on January 15, 2020, which again proved the Cushing's Syndrome diagnosis and related symptoms. (Admin. R. 513-16.)

60.     On January 21, 2020, Plaintiff submitted a letter from Dr. Isales stating that Plaintiff's Cushing's Syndrome symptoms were so severe that Plaintiff could develop

9

diabetes, heart disease, muscle loss and weakness, anxiety, and depression. Further, Dr. Isales stated that Plaintiff was permanently disabled. (Admin. R. 526-27.)

61. On January 28, 2020, Defendant Prudential asked the same Dr. Cooper to again review Plaintiff's medical records to determine if Plaintiff was totally disabled. (Admin. R. 532-33.)

62. On February 5, 2020, Dr. Cooper offered another negative opinion in the claims. He again ignored the treating physicians' opinion and records. He ignored medical evidence that documented Plaintiff's irregular fatigue, susceptibility to bruising, and increased blood pressure. (Admin. R. 540-43.)

63. Defendant Prudential paid Dr. Cooper for his review of Plaintiff's claims. (Admin. R. 551.)

64. By letter dated February 20, 2020, Defendant Prudential again upheld its decision to terminate Plaintiff's claim for short-term disability benefits and denied Plaintiff's claim for long-term disability benefits. (Admin. R 559-62.)

65. In its denial letter, Defendant Prudential admitted that Dr. Isales said that Plaintiff had no work capacity. (Admin. R 559-62.)

66. In its denial letter, Defendant Prudential admitted that Plaintiff had "a history of subclinical Cushing's syndrome [sic] leading to adrenalectomy in 2015 . . . ." (Admin. R 559-62.)

67. On July 2, 2020, Plaintiff filed another appeal and explained that his Cushing's Syndrome was producing an irregular amount of cortisol and that he needed to remain in stress free environments to reduce the amount of cortisol. Plaintiff also included medical support from his primary care physician, Dr. James William Thurmond

("Dr. Thurmond"), that Plaintiff was "totally disabled for any gainful employment and has been since February 26, 2019." (Admin. R. 575-76.)

68. On July 9, 2020, Defendant Prudential asked Dr. Cooper to review Plaintiff's file again. (Admin. R. 591-92.)

69. On July 15, 2020, Dr. Cooper again ignored the medical evidence and opined Plaintiff could work without medical restriction from Cushing's Syndrome. (Admin. R. 599-604).

70. On July 21, 2020, Defendant Prudential paid Dr. Cooper again for reviewing Plaintiff's medical records. (Admin. R. 612.)

71. On August 7, 2020, Dr. Isales wrote a letter to Dr. Cooper directly explaining that Plaintiff's Cushing's Syndrome symptoms indeed impaired Plaintiff's ability to work. Dr. Isales attached Plaintiff's medical record and laboratory results displaying Plaintiff's irregularly high blood pressure, glucose levels, and lipid levels, to support his position. (Admin. R. 642-46.)

72. On August 10, 2020, Defendant Prudential and Dr. Cooper acknowledged receipt of Dr. Isales' August 7, 2020, letter with supporting evidence. (Admin. R. 650-52.)

73. On August 12, 2020, Dr. Cooper again offered an opinion that Plaintiff's Cushing's Syndrome was not bad enough to impair Plaintiff's functions to work. However, Dr. Cooper acknowledged that the psychological impact of Cushing's Syndrome was beyond his scope of knowledge, and he could not provide a competent assessment. (Admin. R. 665-67.)

74. On or about August 14, 2020, Defendant Prudential received another invoice from Dr. Cooper for his review of Plaintiff's medical records and, subsequently, paid Dr. Cooper. (Admin. R. 678.)

75. By letter dated September 1, 2020, Defendant Prudential informed Plaintiff that the claims process for short-term disability and long-term disability benefits was complete and exhausted, and Prudential upheld its denials of benefits. (Admin. R. 748-51.)

76. Defendants also denied Plaintiff's claim for continuation of group life insurance with waiver of premium because of disability. Under the Life Plan, group basic life and group optional life coverage was supposed to continue under a waiver of premium if the plan participant became disabled.

77. In denying life insurance continuation, Defendants relied solely upon Defendant Prudential's wrongful denial of disability benefits.

78. Plaintiff timely appealed Defendants' denial of life benefits.

79. The Social Security Administration found that Plaintiff was disabled from engaging in any substantial gainful activity effective February 25, 2019. (Admin. R. 629-32.)

80. The Social Security Administration determined that Plaintiff was entitled to receive to disability benefits beginning on September 25, 2019 – at the end of the five-month statutory waiting period. (Admin. R. 629-32.)

81. The Social Security Administration disability determination is in the Administrative Record.

82. Plaintiff exhausted all administrative remedies prior to filing this lawsuit.

83. Plaintiff has been damaged as a result of Defendant's wrongful denials of benefits.

84. Defendants' caused Plaintiff financial distress.

85. Plaintiffs seek actual damages, pre-judgment interest, attorney's fees, costs and expenses, and other equitable remedies.

## FOR A FIRST CAUSE OF ACTION
(For benefits, taxable costs, interest, and attorney's fees
Pursuant to ERISA, 29 U.S.C. §§ 1132(a)(1)(B) and (g))

86. The allegations of paragraph One (1) through Eighty-five (85) not inconsistent herewith are hereby realleged as fully and effectually as is set forth herein verbatim.

87. Defendants' denial of benefits was wrongful pursuant ERISA, 29 U.S.C. § 1132 (a)(1)(B).

88. As a result of Defendants' wrongful denial of benefits, Plaintiff has been forced to incur significant legal fees, costs, and expenses to secure his rightful benefits.

89. Defendants have the ability to satisfy an award of attorney's fees pursuant to 29 U.S.C. § 1132(g) and awarding Plaintiff reasonable attorney's fees would not be a hardship on Defendants.

90. Awarding attorney's fees would likely deter any continued mismanagement and mishandling of claims for benefits from this Plan.  Awarding attorney's fees would prevent this type of situation from occurring to the many other participants in Defendants' Plan, who are eligible for similar additional coverage benefits and would suffer substantial hardships in seeking remedy.

91. Awarding Plaintiff reasonable attorney's fees is part of the legislative intent of Congress expressed in 29 U.S.C. Section 1001(b) in that ERISA was enacted to protect the interest of welfare plan participants by providing for appropriate remedies and sanction when Plan terms and/or ERISA are violated.

92. Based upon the foregoing, Plaintiff is entitled to an order declaring the existence of his entitlement to benefits from the Disability Plan and the Life Plan; requiring Defendants to provide said benefits; to an order granting Plaintiff reasonable attorney's fees, prejudgment interest, costs, expenses incurred in connection with this lawsuit pursuant to ERISA, 29 U.S.C. Section 1132(g)(1); and for such other equitable relief as this Court deems just and proper.

    Respectfully Submitted,

    s/Nekki Shutt_____
    Nekki Shutt (Fed ID No. 6530)
    BURNETTE SHUTT & McDANIEL, PA
    912 Lady Street, Second and Third Floors
    Post Office Box 1929
    Columbia, South Carolina 29202-1929
    Tel. (803) 904-7912
    Fax (803) 904-7910
    nshutt@burnetteshutt.law

    **ATTORNEYS FOR PLAINTIFF**

February 27, 2023

Columbia, South Carolina